IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| GLORIA TAYLOR, individually and as Independent Administrator of the Estate of STEVEN TAYLOR, <br><br> Plaintiff, <br><br> v. <br><br> Officer JOSEPH GARRETT, individually and as agent, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) Case No. 17-cv-2183 ) ) ) ) ) ) |

OPINION

**COLLEEN R. LAWLESS, United States District Judge:**

Before the Court are Plaintiffs' Motion to Bar Defense Expert Dr. Lyman [Doc. 28] and Defendants' Motion to Bar the Testimony of Dennis Waller [Doc. 31]. Because the motions were filed before the entry of summary judgment in favor of Defendants by United States District Judge Colin S. Bruce and Plaintiffs' subsequent appeal, the Court granted the parties leave to file supplements to their pleadings following the Seventh Circuit's Mandate. Defendant filed a Supplement [Doc. 62] to his Motion to Bar the Testimony of Dennis Waller, and Plaintiffs filed a Supplemental Response [Doc. 61] to that motion.

I.   BACKGROUND

In her Amended Complaint, Plaintiff Gloria Taylor, individually and as Independent Administrator of the Estate of Steven Taylor, Deceased, alleges this case arises out of interference and excessive force used to restrain Steven Taylor, by Defendant

Joseph Garrett while employed by former Defendant City of Milford on August 17, 2016, at Steven Taylor's home. (Doc. 20 at 2). The Amended Complaint included several claims against the City of Milford and Defendant Officer Garrett. (Doc. 20, 14-36). However, the sole remaining claim in this case is brought by Plaintiffs under 42 U.S.C. § 1983 against Garrett. (Doc. 57, 1).

In an Opinion and Order entered on December 12, 2019, Judge Bruce granted Defendants' Motion for Summary Judgment. (Doc. 45). Plaintiff filed a Notice of Appeal (Doc. 47), challenging only Judge Bruce's finding that Defendant Garrett was entitled to qualified immunity. (Doc. 56 at 7). Following remand, the parties filed a Joint Status Report stating that they seek rulings on three pretrial motions to bar testimony that were denied as moot by Judge Bruce. (Doc. 57). The case has since been transferred to the undersigned.

Each party seeks to exclude the other party's proffered expert on police practices. Defendant seeks to exclude the testimony of Dennis Waller, while Plaintiff moves to exclude the testimony of Michael D. Lyman, PH.D.

II.    **DISCUSSION**

   **A. Legal Standards**

Federal Rule of Evidence 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and

> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. In *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), the Supreme Court interpreted an earlier version of Rule 702 and explained that it imposes a special gatekeeping obligation on trial judges with regard to scientific testimony. The district court's "gatekeeping obligation . . . applies not only to testimony based on scientific knowledge, but also to testimony based on technical or other specialized knowledge." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999); *see also Lees v. Carthage Coll.*, 714 F.3d 516, 521 (7th Cir. 2013) ("[T]he *Daubert* analysis applies to *all* expert testimony under Rule 702, not just scientific testimony."). While the scientific or technical evidence need not have general acceptance, the district court must ensure that the evidence is relevant and reliable before admitting it. *See Daubert*, 509 U.S. at 588-89; *see also United States v. Truitt*, 938 F.3d 885, 889 (7th Cir. 2019) (noting that judges act as gatekeepers "to ensure that expert testimony is both relevant and reliable.")

In acting as a gatekeeper, district courts must evaluate: (1) the proffered expert's qualifications; (2) the reliability of the expert's methodology; and (3) the relevance of the expert's testimony." *Kirk v. Clark Equip. Co.*, 991 F.3d 865, 872 (7th Cir. 2021). To be relevant, expert testimony must "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Courts consider the reliability of an expert's opinion by making "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid." *Anderson v. Raymond Corp.*, 61 F.4th 505, 509 (7th Cir. 2023) (quoting *Daubert*, 509 U.S. at 592-93). Some factors to consider include:

"(1) whether the particular scientific theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique has achieved general acceptance in the relevant scientific or expert community." *Id.* at 109 (internal quotation marks and citations omitted).

Rule 702 requires a flexible inquiry and recognizes that the accuracy of proposed expert testimony can be explored adequately via the normal adversarial process of "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Lees*, 714 F.3d at 526 (quoting *Daubert*, 509 U.S. at 596). It is "the soundness and care with which the expert arrived at her opinion" that is the focus of the inquiry and not "the ultimate correctness of the expert's conclusions." *Anderson*, 61 F.4th at 510. Moreover, "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a).

### B. Defendant Garrett's Motion to Bar Testimony of Dennis Waller

Defendant seeks to exclude the testimony of Dennis Waller, Plaintiff's police practices expert, who intends to offer the following opinions: (1) "[a]rbitrarily maintaining a subject in a position which impedes his ability to breathe is contrary" to national law enforcement standards and "[a]bsent justification for deadly force, such action is recognized as reckless conduct which may lead to unnecessary medical complications or an untimely death;" (2) "Officer Garrett's use of force, i.e., forcing Steven face down onto the bed, using pressure points to keep him face down, not rolling him

over in a timely manner, impeded Steven's breathing," which was "inconsistent with Officer Garrett's training and showed a reckless disregard to the safety and well-being of Steven Taylor;" and (3) "Properly run police departments ensure that officers are provided with appropriate training; policies and procedure which are consistent with their training to provide guidance; supervision to see that officers are acting in a manner consistent with their training and department policy; and, discipline, either positive or negative, to ensure compliance with department policy. The Village of Milford failed to provide even a modicum of training, meaningful policy and procedures in critical areas, supervision, and/or discipline consistent with the demands of law enforcement in this day and age." (Doc. 31 at 1-2). In support of his second opinion, Waller writes, "Officer Garrett clearly utilized unnecessary force by continuing to maintain Steven in a position in which it was obvious he was having difficulty in breathing." (Doc 61 at 3). Defendant contends that, because Judge Bruce's summary judgment ruling on Plaintiff's *Monell* claim in Count VII stands, Waller's final opinion concerning the amount of training and supervision Garrett received from the Milford Police Department is now moot and irrelevant.

1. **Dennis Waller's Background**

Defendant claims Mr. Waller is a "hired gun" who for decades has made his income primarily as a police practices expert and in recent years has been compensated approximately $220,000 per year. Defendant alleges he has created a cottage industry testifying on behalf of plaintiffs in cases brought by Chicago civil rights firms. In his

report, Waller states he has served as a consultant in over 700 cases involving issues related to police policy, procedure, and practice.

In considering expert testimony, a court "must ensure that it is dealing with an expert, not just a hired gun." *Tyus v. Urban Search Management*, 102 F.3d 256, 263 (7th Cir. 1996). Plaintiff notes that Mr. Waller has degrees in both police and public administration and has received over 3,700 hours in law enforcement training. He has been an assessor for the Commission on Accreditation for Law Enforcement Agencies, a Fellow of the American College of Forensic Examiners, and the director of a regional police training academy in North Carolina. Waller has served as a police officer, field training officer, detective, sergeant, lieutenant, department training officer, and chief. He has been certified as an instructor in police training, defensive and arrest tactics, and as an internal affairs investigator/supervisor.

Given this background, Waller has trained hundreds of officers in numerous aspects of citizen interactions, use of force, and issues related to professional and ethical conduct. He has extensive experience as a consultant/expert witness involving issues related to police policy, procedure, and practice and has served as an expert witness in federal court, state court, and administrative hearings. He has provided opinions in over 700 police policy, procedure, and practice cases in 36 states.

The fact that an expert is paid for his testimony is not unusual and not a basis to question his testimony. *See Daubert*, 43 F.3d at 1317 ("That an expert testifies for money does not necessarily cast doubt on the reliability of his testimony, as few experts appear in court merely as an eleemosynary gesture."). It also is fairly common for a particular

expert to usually testify on behalf of one side or the other. Based on his extensive training and experience, the Court concludes Mr. Waller has the educational background and experience to offer opinions on police practices.

In *United States v. Brown*, 871 F.3d 532 (7th Cir. 2017), the Seventh Circuit addressed the relevance of expert testimony about police practices in the criminal context and specifically stated:

> The level of factual complexity in the case may also bear on the relevance of expert testimony about police practices or protocols. In many cases evaluating an officer's conduct will draw primarily on the jury's collective common sense. The everyday experience of lay jurors fully equips them to answer the reasonableness question when a case involves facts that people of common understanding can easily comprehend. The jury's common experience will suffice, for example, when police use their bare hands in making an arrest, the most primitive form of force. But when something peculiar about law enforcement (*e.g.*, the tools they use or circumstances they face) inform the issues to be decided by the finder of fact, a jury's everyday experience may not be enough to effectively assess reasonableness. If a case involves a gun, a slapjack, mace, or some other tool, the jury may start to ask itself: what is mace? [W]hat is an officer's training on using a gun? [H]ow much damage can a slapjack do?

*Id.* at 538 (internal quotation marks and citation omitted). The defendant in *Brown* was charged with willful deprivation of another's federal right under color of law after a video camera showed him punching and kicking an individual. *Id.* at 538-39. The court determined that an expert on police department use-of-force standards was unnecessary given that the jury could use its collective common sense in evaluating the officer's conduct. *Id.*

In *Florek v. Village of Mundelein, Ill.*, 649 F.3d 594 (7th Cir. 2011), the Seventh Circuit found that the magistrate judge's exclusion of Dennis Waller's testimony was an appropriate exercise of her discretion. *Id.* at 601-02. Mr. Waller would have testified that

"no rational, experienced officer would/could reasonably expect a response and voluntary compliance within fifteen seconds" of knocking and announcing his presence at 10:22 p.m., when the officers executed their search. *Id.* at 596, 601. Waller's proposed testimony was excluded because it was adequately comprehensible by lay individuals. *Id.* at 601-02. The court in *Florek* explained:

> Plainly, the concerns highlighted by the Court [in *Wilson v. Arkansas*, 514 U.S. 927 (1995)] will inform the determination about whether law enforcement have waited a reasonable time before gaining entry to a residence by force. It is self-evident that expert testimony may be useful on those subjects. How long does it take to dispose of drugs? What sorts of problems do law enforcement encounter the longer they wait before entering a residence? These are questions whose answers cannot be furnished by everyday experience. Waller's testimony, on the other hand, did not approach Rule 702 territory. It appears that Waller's chief contribution was going to be his belief that, given the late hour, it would have been unreasonable to expect voluntary compliance with a knock at the door in 15 seconds. Florek does not explain why expert testimony on this subject would be useful to the jury, instead seeming to contend that expert testimony is always necessary where "constitutional freedoms and guarantees are concerned" and police practices are at issue. That position is untenable; everyday experience teaches people how long it takes to walk from room to room. The magistrate judge did not abuse her discretion in barring the testimony, nor did she do so by keeping out Waller's testimony that a reasonable police officer would call an ambulance if confronted with an arrestee known to be experiencing heart attack symptoms.

*Id.* at 603. This case is not quite like *Brown* or *Florek*. While a lay person might understand certain aspects of this case based on similar events that have been in the news, the application of national law enforcement standards and whether the extent and type of force used to subdue an individual makes it difficult for him to breathe are not necessarily the types of issues that are comprehensible by lay individuals.

Defendant further asserts Mr. Waller's opinions have been excluded in federal courts throughout the country on multiple occasions for offering similar opinions

consisting of legal conclusions and opinions that usurp the role of a factfinder. Defendant contends Waller also offers opinions outside of his area of expertise such as forensic medicine, pathology, and other topics. In response, Plaintiff alleges Waller's testimony has been limited in approximately 1% of the cases in which he was retained over a 20-year period.

Defendant cites the following cases in which Mr. Waller's opinions have been excluded: *Davis v. Dunn*, 277 F.R.D. 362, 367 (N.D. Ill. 2011) (excluding Waller's testimony regarding how a shooting occurred because of his lack of experience in medical forensics or pathology and noting that the same kind of testimony sought to be admitted in the case had also been rejected in other cases); *Estate of Carlock v. Williamson*, 2013 WL 12244415, at *4 (C.D. Ill. 2013) (holding Waller may offer testimony in the field of law enforcement and use-of-force policies but is not qualified to give an opinion in the medical field); *McBroom v. Payne*, 2011 WL 1356925, at *3 (S.D. Miss. 2011) (excluding as legal conclusion Waller's opinion that the force used in officer-involved shooting was excessive); *Hallet v. Richmond*, 2009 WL 5125628, at *1-2 (N.D. Ill. 2009) (excluding opinion of Waller that defendants used unreasonable force under the circumstances); *Ingram v. Pavlak*, 2004 WL 1242761, at *5 n.3 (D. Minn. 2004) (excluding Waller's testimony for applying police department guidelines which mirror Fourth Amendment reasonableness to his factual characterizations standard as an improper legal conclusion); *Egebergh v. Village of Mount Prospect*, 2004 WL 856437, at *3 (N.D. Ill. 2004) (permitting Waller to testify about "certain of defendants' actions and whether they were consistent with proper police procedure" but excluding testimony about whether the failure to provide

diabetes medication violated deliberate indifferent standards). Defendant also cites *Hygh v. Jacobs*, 961 F.2d 359 (2d Cir. 1992) for the same proposition, but the Second Circuit was considering another expert's opinion in *Hygh*. *See id.* at 364.

As Plaintiff alleges, most of the examples cited by Defendant involve cases wherein Waller's opinions and testimony may have been limited but not barred entirely. Obviously, Waller will not be permitted to offer opinions on topics outside of his expertise such as medicine or forensic pathology. However, the fact that an expert may be barred in one case does not automatically preclude him from testifying in another case as it is a matter of discretion left to the district court to determine based on the case-specific facts and opinions offered. *See Native American Arts, Inc. v. Peter Stone, U.S.A., Inc.*, 222 F. Supp.3d 643, 648 (N.D. Ill. 2016); *see also Estate of Stuller v. United States*, 811 F.3d 890, 895 (7th Cir. 2016).

### 2. Methodology as a Basis for Exclusion

Defendant contends Waller's first three opinions use language that track legal standards and essentially provide legal conclusions. Waller uses phrases like "reckless conduct," while stating the officer's conduct involved "reckless disregard for the safety of others." These phrases, along with the statement Officer Garrett allegedly used "unnecessary force," are very similar to the legal standards in this case. Defendant argues this type of testimony runs the risk of usurping the role of the factfinder by making a credibility determination. As Plaintiff alleges, the legal test for Fourth Amendment claims is that of "objective reasonableness." *Graham v. O'Connor*, 490 U.S. 386, 396 (1989). Waller

does not purport to analyze *Graham* or apply its objective reasonableness standard to the facts of this case.

In *Jiminez v. City of Chic.*, 732 F.3d 710 (7th Cir. 2013), defendants challenged some of the testimony of plaintiff's expert concerning reasonable police practices because "reasonableness" is a legal conclusion, and experts should not provide legal opinions. *Id.* at 720. Defendants further argued that the expert's testimony on reasonable police practices was intertwined with the legal standard of probable cause and should have been barred. *Id.* at 721. The Seventh Circuit noted such testimony is relevant and explained, "When an expert offers an opinion relevant to applying a legal standard such as probable cause, the expert's role is limited to describing sound professional standards and identifying departures from them." *Id.* (internal quotation marks omitted); *see also Abdullahi v. City of Madison*, 423 F.3d 763, 772 (7th Cir. 2005) (proffered expert testimony that officer's tactics violated standard police practices might be relevant to reasonableness inquiry). The Court denies Defendant's request to bar Waller's testimony on this basis as long as his testimony avoids applying the objectively reasonable standard to the facts of the case.

Defendant contends Waller should be precluded from offering an opinion regarding whether the use of force restraint method could result in "medical complications" or an "untimely death" because he is not a medical professional and has had no training or expertise in medical forensics or forensic pathology. In response, Plaintiff alleges Waller is testifying only to national standards of policing and not providing opinions concerning "medical complications" or an untimely death. Waller's

opinion is that holding a person in a position which limits their ability to breathe is inconsistent with nationally accepted standards of law enforcement training and practice and, barring a justification for deadly force, such action is considered reckless because it may lead to unnecessary medical complication or death. While Waller explains the national standard in his report, he does not provide a causation opinion regarding Taylor's death.

Waller explains that police have been trained to roll individuals onto their sides and avoid a face-down position. Waller's report states that Defendant testified he has received this training but, according to witnesses, did not turn Taylor face up. Furthermore, Waller provides opinions regarding nationally recognized use of force training standards, including methods that are less likely to harm an individual and those that assist officers in identifying potentially dangerous positions. As long as Waller's testimony is limited as provided in Plaintiff's response and does not stray into impermissible areas such as medical complications or forensic pathology, the Court concludes it is relevant and admissible.

Defendant further asserts Waller's final opinion concerning lack of training is irrelevant because this case concerns the response to a medical emergency, not enforcement of the law. Defendant claims that, at his deposition, Waller was unable to answer what model safeguards or authoritative text, if any, would apply with respect to law enforcement responding to a medical emergency as opposed to enforcing the law. Additionally, Defendant claims Waller's third opinion as to the lack of training and supervision fails to account for the fact that Garrett was a highly trained EMT-Paramedic

at the time of the incident. The sole remaining claim in this case is whether Defendant used excessive force during the course of a medical emergency. The officer's training is potentially relevant in that inquiry. Defendant is correct that Waller's opinion concerning training of officers as it relates to Plaintiff's *Monell* claim is no longer relevant because the *Monell* claim against City of Milford has been dismissed. However, the Court declines to exclude the opinion because national police standards and the training received by Defendant may be relevant to the remaining claim.

For all of these reasons, the Court denies Defendant's Motion to Bar the Testimony of Dennis Waller. Mr. Waller's opinions are admissible for the reasons stated herein. Defendant is free to object if, for example, any testimony relates to topics on which Waller is not an expert or the testimony otherwise violates the Federal Rules of Evidence.

### C. Plaintiff's Motion to Bar the Testimony of Defendant's Expert Dr. Lyman

Plaintiff seeks to bar the testimony of Defendant's police practices expert, Michael D. Lyman, PH.D. Dr. Lyman's report indicates he has been a college professor teaching and researching policing topics for over 30 years. He states he is nationally recognized in the areas of police procedure, criminal investigation, and drug enforcement.

Defendant states that Dr. Lyman seeks to offer the following opinions: (1) "It is my opinion, stated within a reasonable degree of professional certainty, that if Village of Milford Police Officer Joseph Garrett's account of this incident is to be believed, then his actions in encountering Mr. Steven Taylor, for the purpose of protecting him from self-harm, were justified and objectively reasonable considering the totality of the circumstances, and were consistent with nationally recognized standards of care;" and

(2) "It is my opinion, stated within a reasonable degree of professional certainty, that at the time of his encounter with Steven Taylor, Village of Milford Police Officer Joseph Garrett was properly trained and properly prepared to address the incident involving Mr. Taylor."[1]

### 1. Application of Principles and Methods to Case File

In alleging Dr. Lyman's opinions are not based on reliable methodology, Plaintiff contends that the opinions are based on an incomplete review of the record and case file. For example, Dr. Lyman did not have access to all of the medical records or deposition transcripts of an EMT or any treating physicians. Plaintiff argues that, without the entire case file, Dr. Lyman could not analyze the allegations of positional asphyxiation and whether Defendant's methods would violate national standards of police practices.

Defendant alleges Dr. Lyman did not review medical records because he is not a medical expert and is unqualified to testify on such topics. Dr. Lyman reviewed the Amended Complaint and Answer, Waller's report, deposition testimony of the responding EMTs, Defendant Garrett, and the Taylors who were present at the scene, the International Association of Chiefs of Police ("IACP") standards, City of Milford police report, the Iroquois County Sheriff's Report, the Computer Aided Dispatch Report, Milford's personnel policy, Milford's Police Department Policies and Procedures, and both the City and Garrett's responses to written discovery. Defendant claims he then

---

[1] Like Waller's opinion concerning the nature of training provided by the City of Milford, Lyman's opinion concerning whether Garrett was properly trained is now irrelevant to the extent that it relates to the *Monell* claim against the City of Milford.

applied what he learned from these materials and offered his opinions based on his education and professional training.

Plaintiff further asserts Dr. Lyman's opinions contradict authoritative policies and his prior opinions on positional asphyxia. Specifically, Dr. Lyman fails to consider what Plaintiff claims is the obvious alternative explanation and Plaintiff's entire theory of the case—that Garrett's unreasonable use of force and dangerous restraint tactic led to Taylor's positional asphyxia and death. Dr. Lyman fails to apply IACP policies concerning the detaining of individuals in face down positions. Plaintiff contends that, in reaching these opinions, Dr. Lyman diverges from his own reliable principles of considering the IACP as the authority on police practices, applying those practices to the instant case, and reviewing the entire file for evidence that positional asphyxia may have played a role in Taylor's death. Accordingly, Plaintiff contends Dr. Lyman has failed to reliably apply the principles and methods to the facts of the case in violation of Rule 702.

The Supreme Court has stated that the inquiry under Rule 702 is a flexible one. *See Daubert*, 509 U.S. at 594. Evidence which may be "shaky but admissible" can be appropriately attacked by "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Id.* at 596. Plaintiff's contention that Dr. Lyman ignored the obvious cause of Taylor's death may or may not turn out to be accurate. However, any weaknesses in his testimony can be challenged by vigorous cross-examination and presentation of Waller's testimony. The Court finds no basis to exclude Defendant's rebuttal expert witness based on the application of his principles and methods to the case.

### 2. Dr. Lyman's Opinions and Whether There is a Sufficient Factual Basis

Plaintiff next contends Dr. Lyman's opinions are without sufficient factual basis because he did not receive the full record and was missing important materials. According to Plaintiff, Dr. Lyman's opinions are based on speculation as to what occurred and completely discount the possibility that Taylor's position was not consistent with proper police protocols because Dr. Lyman did not review any medical documents that suggested asphyxiation occurred. The only medical records Dr. Lyman reviewed had no explanation regarding what actually caused Taylor's difficulty in breathing and death. In support of her argument, Plaintiff cites *McKay v. City of St. Louis*, 2019 WL 1436972 (E.D. Mo. March 31, 2019), wherein the court excluded as unreliable Lyman's opinion which relied, in part, on several untrue or misstated facts. *See Id.* at *17.

Dr. Lyman's opinion relates to Defendant's theory of the case which, not surprisingly, is different than Plaintiff's theory. It is based on Defendant Garrett's account of the incident and the actions he took. At trial, Plaintiff can question Dr. Lyman about his opinions and any perceived weaknesses, including specific information he did not consider. Moreover, Defendant states he will have another expert on whether positional asphyxia occurred, so Plaintiff will have an opportunity to question that witness as well. Any alleged deficiencies in Dr. Lyman's opinions can be addressed by cross-examination and the testimony of Plaintiff's expert witness. The Court declines to bar the testimony on this basis.

### 3. Legal Conclusions

Plaintiff next contends Dr. Lyman's testimony is made up entirely of legal conclusions concerning various opinions on legal standards, including: (1) standards for the use of force; (2) explanations and definitions of the phrase "objectively reasonable," including whether Defendant's conduct met that standard; (3) that the Illinois statute on use of force is consistent with national standards; (4) that police officers are trained to evaluate from the standpoint of reasonable force; and (5) definitions of the term "reasonable force."

Defendant notes Dr. Lyman offers two opinions, one regarding whether the use of force meets police standards and another concerning whether Garrett received adequate training. Dr. Lyman will not specifically testify that the use of force was "objectively reasonable" as that closely mirrors the legal standard. However, he should be allowed to testify whether Defendant's response was reasonable in relation to police practices standards. As with Waller, the Court will not exclude the testimony as long as Dr. Lyman's testimony is consistent with *Jimenez* and *Abdullahi* and avoids applying the objectively reasonable standard to the facts of this case.

### III. CONCLUSION

For the reasons stated herein, both Defendants' Motion to Bar the Testimony of Dennis Waller (Doc. 31) and Plaintiff's Motion to Bar Defendants' Expert Dr. Lyman (Doc. 28) are DENIED. At trial, the parties remain free to raise any appropriate objections.

The Clerk is DIRECTED to terminate Defendants' Motion to Supplement (Doc. 62), as that pleading is a Supplement to the Motion to Bar Expert.

ENTER: March 15, 2024

    FOR THE COURT:

_____
COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE